ELIZABETH FURMAN, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

1. **Common Carrier**: BILL OF LADING : POSSESSION : PRESUMPTION. The possession of a bill of lading by the husband of the shipper named therein, and its exhibition by him to the carrier that issued the same at the time of giving orders in regard to the reshipment of the goods therein described, warrants the presumption that the husband in giving such orders is acting as the agent of the wife, and the carrier will be entitled to act thereon.

2. ———: ———: ATTACHMENT OF PROPERTY : NOTICE TO SHIPPER. The plaintiff shipped a quantity of household goods from Chicago by way of defendant's railway to Atchison, Kansas. In an action to recover the value of said goods for the failure of defendant to transport them to their destination, the jury returned a special verdict, finding that subsequent to the shipment the plaintiff's husband called at defendant's office in Muscatine, Iowa, with the bill of lading in his possession, to order the delivery of said goods at Muscatine instead of at Atchison, and was then notified by defendant that the goods had been taken from its possession in Chicago under a writ of attachment; that this notice to plaintiff's husband was given in time to assert plaintiff's right and title to the goods before the same were sold under the attachment proceedings. *Held*, that defendant's motion for judgment upon the special findings, notwithstanding the general verdict, ought to have been sustained.

*Appeal from Muscatine District Court.*—HON. C. M. WATERMAN, Judge.

WEDNESDAY, OCTOBER 29, 1890.

THIS is an action to recover the value of certain household goods, which it is alleged the plaintiff delivered to the defendant at Chicago, Illinois, for shipment to Atchison, Kansas. Recovery is sought upon the ground that the defendant failed to transport the goods to their destination. There was a trial by jury, and a verdict and judgment for plaintiff. The defendant appeals.

*Thos. S. Wright* and *J. Carskaddan*, for appellant.

*Jayne & Hoffman*, for appellee.

ROTHROCK, C. J.—I. The cause has already been three times in this court on appeal by defendant. See 57 Iowa, 42; 62 Iowa, 395; and 68 Iowa, 219. The judgment was reversed in each of said appeals. The material facts in the case were fully stated upon the former appeals, and it is not necessary to make any statement here except in some slight particulars in which the evidence varies, or has been changed upon the different

1. COMMON carrier : bill of lading : possession : presumption.

trials. Upon the first appeal, this court found that the evidence showed, "without conflict, that plaintiff's husband acted for her in delivering the goods to defendant, and that the shipping receipt was delivered to him." Upon the second appeal, it was found that the evidence tended "to show that the plaintiff's husband attended to the delivery of the goods to the defendant for shipment to Atchison, and that he received the shipping receipt therefor." In the third appeal, it is said "it is not necessary that we should again make a detailed statement of the facts. They appear now to be substantially the same as before, except that before the testimony of the plaintiff's husband showed that he acted for the plaintiff in delivering the goods to the defendant for shipment as a common carrier. That evidence has now been excluded upon the plaintiff's objection. It does not now appear who acted for the plaintiff in making the delivery of the goods, except that he was a man by the name of Furman."

In the present appeal, it is claimed by the plaintiff that her husband had no connection with the shipment of the goods; but that they were removed from a warehouse by a drayman, who delivered the shipping receipt to her, and that she put the receipt in her trunk, and locked the trunk, and that she never at any time delivered the receipt to her husband. The last trial was a full hearing on all the facts. The court submitted to the jury certain special interrogatories, which, with the answers made thereto by the jury, are as follows: "*First.* Did the plaintiff, Elizabeth Furman, go to the railroad depot at Chicago with the goods in controversy, when they were delivered there for shipment to Atchison? *A.* No.

"*Second.* Did the plaintiff personally see any agent of the defendant railway company in regard to the shipment of said goods from Chicago to Atchison? *A.* No.

"*Third.* Was George M. Furman, the husband of plaintiff, present at the delivery of the goods in question, or any of them, at the railway depot at Chicago

when they were delivered there for transportation to Atchison? *A.* No.

"*Fourth.* Were the goods taken from the custody of the defendant (railway company) at Chicago by an officer of the law, on a writ of attachment against plaintiff's husband? *A.* Yes.

"*Fifth.* Were said goods household goods which had been used by the plaintiff and her husband in their housekeeping and family? *A.* Yes.

"*Sixth.* Did George M. Furman, the husband of plaintiff, have the railway receipt or bill of lading for these goods which was issued by defendant at Chicago in his possession at Muscatine, Iowa, on or about June 5, 1878? *A.* Yes.

"*Seventh.* Did George M. Furman, the husband of plaintiff, show the railroad receipt for the goods to any agent or employe of the defendant railway company at Muscatine, Iowa, on or about the fourth or fifth of June, 1878? *A.* Yes.

"*Eighth.* Did George M. Furman, the husband of plaintiff, on or about the fourth or fifth of June, 1878, request any agent or employe of the defendant at Muscatine, Iowa, to have said goods reshipped from Atchison to Muscatine? *A.* Yes.

"*Ninth.* Did the husband of plaintiff, on or about the fifth of June, 1878, at Muscatine, Iowa, learn that the said goods had been attached at Chicago? *A.* Yes.

"*Tenth.* Was George M. Furman, the husband of plaintiff, notified or told by an agent or employe of defendant at Muscatine, Iowa, on or about June 5, 1878, that the goods in question had been attached at Chicago, and had never gone to Atchison? *A.* Yes.

"*Eleventh.* Did the husband of plaintiff send money to one Minard, a lawyer at Chicago, to settle the attachment claim, and release the goods? *A.* Yes.

"*Twelfth.* Did Minard, the Chicago lawyer, receive money from Furman to settle the attachment suit in which said goods were sold under the attachment? *A.* Yes.

"*Thirteenth.* Did plaintiff's husband learn that said goods had been attached in Chicago in time to assert plaintiff's title and right to the goods before they were sold in the attachment proceedings? *A.* Yes."

The only real question in the case is whether the defendant should be held to have discharged its duty as a common carrier by the giving of the notice of the attachment of the goods to the husband of the plaintiff. It appears on the third appeal that the defendant asked an instruction to the jury in these words: "If it appears from the evidence that George M. Furman, the husband of the plaintiff, had the railroad receipt or bill of lading, on which plaintiff brings this suit, in his possession at Muscatine, and exhibited it to the agent of the railroad company at Muscatine, and requested that the goods therein named should be reshipped to Muscatine, then the railroad company had the right to presume and act and rely on the presumption that George M. Furman was the duly-authorized agent of the plaintiff in regard to the shipment and control of the goods in controversy." The district court gave this instruction, but modified so that it should be made to appear that Furman held the receipt with the authority or knowledge of the plaintiff. This court held that the defendant was entitled to have the instruction given without modification. That would appear to have been an end of this case. That was the law of the case, and it is wholly immaterial, so far as the liability of the defendant is involved, how or by what means the husband acquired the possession of the receipt. If the railroad company had the right "to presume, act and rely on the presumption" that the husband was the agent of the plaintiff from the fact that the receipt was in his possession, without further inquiry, no showing of facts as to how he acquired such possession would make the defendant liable. It is not necessary to repeat the argument of the court upon that proposition. That part of the opinion which points out a method by which the wife may prevent her husband from obtaining possession of the shipping receipt in no manner affects the

question of law determined in holding that the modifica-cation of the instruction was erroneous.

　　· II.   The defendant moved for a judgment upon the answers to the special interrogatories notwithstanding the general verdict, which motion was overruled.   We think it should have been sustained.   It is only necessary to examine the former opinions in this case to reach the conclusion that the answers to the questions com-pletely exonerate the defendant from all liability.

2. ——: ——:
attachment
of property:
notice to
shipper.

　　It is claimed in behalf of appellant that the defend-ant waived the motion for judgment by afterwards filing a motion for a new trial.   It is not necessary to deter-mine that question.   The motion for a new trial was withdrawn before any action was had thereon, and the cause then stood precisely as it would have done if it had not been filed.   In our opinion, the motion for a judg-ment upon the answers to the special interrogatories should have been sustained, and the cause will be remanded to the court below, with directions to enter a judgment for the defendant, or, at the defendant's option, such judgment will be entered in this court.   REVERSED.